All right, our last case for today is United States v. De Castro, No. 17-1901. Good morning, Your Honors, and may it please the Court. My name is Jacob Shaman, and I represent Amin De Castro. May it please reserve three minutes of my time for rebuttal? That will be granted. Thank you. The Fourth Amendment issue in this case involves two questions. First, was Mr. De Castro seized? And second, was that seizure justified by reasonable suspicion? The seizure question comes down to whether a reasonable person in Mr. De Castro's position would have felt free to refuse the officer's request to show hands. And in the circumstances of this case, it is clear that a reasonable person would not have felt free to refuse. Mr. De Castro was therefore seized when he submitted. It's an interesting case. We've got some pretty clear findings of fact here, but you bring sort of a different overlay, I think. If I'm not mistaken, you can tell me if I am, but you seem to be saying that a reasonable person of color in an inner city in a – no? No. Well, first of all, our argument is not dependent on race whatsoever or location. I think that the high crime area is icing on the cake. It's particularly frightening to refuse to show hands when the police you know are on edge about gun violence. But I think that this case would come out the same no matter where you were. In regards to race, the Supreme Court in Mendenhall said that race is a factor that the court can consider. But again, I don't think that race has to come into this. I think anybody standing on the street, suddenly a police car drives up to you, an officer gets out, immediately focuses on you, walks right up to you and asks you to take your hands out of your pockets. Anybody, no matter the color of their skin. What should Officer Mulqueeny have done? Well, this court suggested two things that an officer can do in this circumstance rather than conduct an illegal search or legal seizure. The first was Judge Becker in Robeson. He suggested in this sort of situation, the officer can simply observe the suspect from a distance and see if he does anything suspicious that would warrant a stop. Officer could have done that here. But in these circumstances, I mean, at least the tip, we can talk about reasonable suspicion later, but he had a tip that this person was waving a gun around with children around. I mean, is that something where you would just wait and see? Well, reasonable suspicion is an all or nothing game. It's not like you can have half reasonable suspicion and then conduct half a stop. If the officer didn't have reasonable suspicion, and the law is clear that the 911 call here was not enough for reasonable suspicion, then he cannot conduct a stop. All right, what if the officer says, can I talk to you a minute? That would be much more like a consensual encounter, which the Fourth Circuit says in Jones that the classic consensual encounter starts with the officer. So if he says, can I talk to you a minute? And by the way, take your hands out of your pocket. You know, let's suppose that's our case. That would be a much closer case. I think him asking to speak at the beginning, that's almost all the consensual encounter cases, and that's very important to communicate that compliance is not required. The way you put the second question, take your hands out of your pockets, that sounds a little bit more like a command.  I think if the officer walked up and said, hey, Mr. DeCastro, hey, can I talk to you for a second? And by the way, would you mind taking your hands out of your pockets? That would be a consensual encounter. I mean, the record indicates that he politely asked him as he walked up. He didn't have his gun out of the holster. He walked up. He was fronting him, and he said, could you take your hands out of your pocket? He did use a polite tone, but it's a totality of circumstances analysis. A few words would make a difference on the legal question of seizure. Absolutely. I mean, you know, it's a fine line, and dispensing with those preliminaries. Maybe it's too fine of a line. I don't think so. I think the Fourth Circuit says in Jones that the typical consensual encounter begins with a routine approach of the police officer and then a request to speak, and that's very important to communicate that compliance is not required, and that's very different from what happened in this case where the officer drove right up to Mr. DeCastro, got out, immediately focused on him and walked toward him. But there were no other officers. He didn't have his weapon drawn. He just, I mean, he may not have said let's talk, but. . . That's true, but reasonable people are aware these days that refusing to comply with a request to show hands in these circumstances can risk provoking a standoff. Yeah, but there's another side to that coin. The officer is, you know, he's in a high-crime area. Whether that goes to reasonable suspicion is a later point, but he's in a high-crime area. Mr. DeCastro has his hands in his pocket. Why isn't the officer's safety something that's paramount at this point, and why isn't this a reasonable statement on his part to, you know, could you please take your hand out of your pocket? Well, I'll make two points in response to that. The first, as I said earlier, is that there are options available to the officer other than walking right up to him and asking him to take his hands up. Got it. Observe. The second point is that. . . What was the second? The second point I wanted to make is that if this is not a seizure, that means that it's not governed by the Fourth Amendment at all, and that means with no cause whatsoever, a police officer could walk up to Mr. DeCastro and ask him to show hands. So when you're asking whether or not this is a seizure, you have to ask yourself, would this be a seizure if there was no 911 call? And I think the answer to that would be very clear. Well, isn't the Supreme Court made clear that you, again, and I think you recognize this, if it's just conversational, there's no, the Fourth Amendment isn't implicated, right? There's no per se rule about tone. It's a totality of circumstances inquiry. And, in fact, in past cases, courts have found that conversational requests can be seizures. So in Richardson, the Sixth Circuit said that a request, okay, just hang out here for me for a sec, that's a seizure. In Jones, the officer said, hey, do me a favor. Can you lift your shirt so I can see you don't have any weapons? That was a seizure. In Johnson, a police officer tapped on someone's car window and twice asked him to roll it down. He rolled it down a few inches. That was a seizure. All of those were one police officer. But what about Ford v. Boswick, where the seizure didn't occur because the officer just approached to ask a few questions? Right. So in Boswick, that was a bus search, and in that case you had the routine approach of the police officers. The police officers got on the bus, walked down the road, and talked to people. And when they got to the defendant, they asked if they could speak with him. They identified themselves. They explained their purpose. And those preliminary questions are very important because they communicate that this is not a compelled encounter. Why would this be a seizure and a request for identification? Because this is a seizure. Why would it not be a seizure? If an officer walks up to you in the street and says, can I see some ID, I think most reasonable people would feel free to walk away. But if a police officer walks up to you and says, let me see your hands, we know that the officer in this case, he said himself at the hearing that he asked that question to avoid any misunderstandings or aggressions just to keep us both safe. Do you think a person would feel more free to leave when a police officer walks up and says, by the way, son, can I see your identification? I think that in those circumstances, there's no concern to be taken away. You could make a 180 and get out of there. Well, to be candid, I think the doctrine in this area is a little bit fanciful. I think most people, when they're approached by the police, probably feel pretty intimidated. But I think it's much more intimidating to be approached and asked to show hands because everybody knows this is what Judge Posner said in Jackson. He didn't ask him to show his hands. He just said, could you please take your hands out of your pocket? Sure. I mean, those are pretty similar. We know the officer did it because he thought he was armed and he wanted to see his hands. What if he said, could you please take your hands out of your pocket and show me your identification? I still think the safety-related nature of the first request makes it feel compelled, makes a reasonable person know this is what Judge Posner said in Jackson. If a police officer asks you to take your hands out of your pockets, you know that he anticipates some menace from you, and Judge Posner said you'd be foolish to refuse that request. We see in the news these days reasonable people know that if you refuse this kind of request, you might provoke a violent standoff, and the police are understandably on edge about gun violence. But we've seen from some of these reports they can go from zero to 60 very quickly. All right. Well, that's kind of what I was getting at at the very beginning. Take race and, I guess, even location out. Are you saying that now there should be a different standard because people are more nervous that there's going to be an escalation? Frankly, I think that this case would come out the same any time in the past 40 or 50 years, and the law hasn't really changed that much. We've known the outlines of this doctrine for a long time. But I think the recent incidents that we all see on the news only hammer home the fact that when a police officer marches right up to you in this targeted manner and asks you to show hands, refusing to comply risks violence. And no reasonable person would want to risk a violent standoff with the police. The Fourth Amendment says that the right of the people to be secure against unreasonable seizures. I know there's a lot of law interpreting that. Right. Why is this unreasonable? Two points on that. The first is that we don't need to ask the broad question, is this reasonable or not? The Supreme Court has told us, as a matter of law, it is unreasonable for a police officer to make a compulsory request of someone without reasonable suspicion. They've also told us that it's not reasonable suspicion if the police get an anonymous 911 call accusing someone of a crime and saying where they're standing. So as a matter of law, the Supreme Court has said this wasn't reasonable. The second point is, again, it's a two-part question. Was there a seizure? Was the seizure justified? If the court accepts the government's argument that there was no seizure, that means the Fourth Amendment doesn't apply at all. That means any of us walking down the street, if the police don't like the look of us, they can drive right up to us. Your light has turned orange. Let's assume we felt this was, we've agreed with you and found that this was a seizure. So why no reasonable suspicion here? The Supreme Court has said that a tip has to have sufficient indicia of reliability to justify a stop. And the court has said in J.L., and this court said in Robeson, that an anonymous call describing someone's location and appearance and accusing them of a crime is not grounds for a stop. It's very important that it not be grounds for a stop, because otherwise people could harass others that they didn't like by calling the police and making false allegations. Is this different from the J.L. case? I mean, that was a gun possession case. This one is a real threat of violence, somebody waving a gun around allegedly. Well, J.L. said that they would not create a firearm exception to the rule that they were outlining there because they didn't want to allow for the loophole that people would just invent fake accusations and include guns in them to get the police to respond. And by the way, that's not just some made-up hypothetical concern. That is an all-too-frequent occurrence today. There's even a name for it. It's called swatting, S-W-A-T-T-I-N-G. The court may be familiar. People call the police and say someone they don't like is waving a gun around, and they get a big police response. And innocent people have actually been killed because of that. So the court, in its wisdom, J.L., said that is not enough. The other thing about this case is we have no idea whether or not the allegation made by the 9-1-1 caller was ongoing or not. All the calls said, all the incident history detail report says is man pointing gun at children. That could have been standard information. That could have been second-hand information. It could have been made up. I see my time is up. I'll save the rest of my time for a vote. Thank you, counsel. Good afternoon, Your Honor. Robert Zausman on behalf of the government. With regard to the seizure issue, this is very black and white for this court, and I'm not sure any court before has been presented with such a clean issue as this. Because of the factual finding you alluded to, Judge Sanchez made the finding that, quote, at a distance of approximately 5 to 10 feet, Officer McQueen used a polite, conversational, and non-threatening tone to ask DeCastro if he would remove his hands from his pockets. That's page 11 of the appendix. And the exact question, he found the officer credible, and the officer testified the question he said was, could you please take your hands out of your pockets? So that's the question. If you have an officer by himself, gun not drawn, daylight, walking up to someone on the street based on a report of possession of a gun, who simply asks, could you take your hands out of your pockets, obviously is a prelude to having an investigation and conversation. Is that a seizure? There is no case that has ever held in those stark circumstances that it's a seizure. And the only way that the defense here suggested differently was, I have to say, by playing the race card. If you look at their brief, at page 19, they have a quote from Justice Sotomayor from a dissenting opinion about the challenges that are faced by what she referred to as black and brown families. And then they cited three instances out of the thousands of communities in the country, tens of thousands of police officers, three instances in which there have been tragic results. I could cite more. There have been troubling reports in the news over the past few years. But fortunately, you can count them on a couple hands, and none of them involve the circumstance we have here. All of them, including the one cited at page 19 of their brief, involve police officers coming upon someone with an object in their hands, and then tragedy ensues. But nothing as simple as this, where the officer, for obvious reasons to protect his safety, simply says politely, according to the district court, could you take your hands out of your pockets? What about Judge Fischer had a good point. What about officer safety? Does that work into our analysis at all, with the showing hands thing? Well, listening to Judge Fischer, I was thinking I could well see a court developing and putting in a new doctrine, I acknowledge. We're very familiar with the Terry Doctrine, which is if you have reasonable suspicion, you can investigate. If you have reasonable suspicion, they're armed, you can pat down. If you don't, stay away. But is there a middle ground, given that the touchstone of the Fourth Amendment is reasonableness? Is there a middle ground that an officer... There's also quarrels as public safety, but that's in a different situation. Right, so there's public safety for a search. Could there be a comparable exception here? We're not advocating that because it's not necessary to reach it. I could see, at least in these difficult times, where a court may want to consider it. But here the question has been set forth by the courts, which is simply would a reasonable person feel that his liberty has been restricted, that he can't move? That's the standard. And so now they want to walk away from that third rail and say, oh, this is not about race. So what they're now suggesting to you this afternoon is that anywhere in the country, if an officer rolls up on someone in the suburbs, in the city, out on a farm, if a police officer comes up and sees you have your hands in your pocket and said, could you take your hands out of your pocket, would a reasonable person in any of those circumstances think that they're not free to go about their business? And that's just not true, and that's inconsistent with the precedent of this court and the Supreme Court. Of course a person could say, no, I don't want to talk to you today, and turn away. The perception they make is that if the person doesn't take their hands out of their pockets, that violence is going to ensue. Well, what if the person keeps his hands in his pockets and turns away? At that point, that really ratchets down the situation. What we always know is that when there's no reasonable suspicion and the police take action, you have to wait and see what happens. I think it was this court's decision in Waterman, I hope I'm citing the right case, the Judge Rendell decision, where the police came up on somebody, and this was at gunpoint, so this was a seizure, and said take your hands out of your pockets, the person didn't, and backed into a house. And what Judge Rendell wrote in that opinion was, it's no small conference with the defendant that he really didn't have reasonable suspicion at that time when they came on him, and the gentleman created it by the way he reacted to the situation. We're always going to look at what happens next. So is it possible that maybe we're, in this case, we're sort of one step removed from a show of authority? Maybe, can you please take your hands out of your pockets? No, take your hands out of your pockets, maybe it becomes a more strident, and maybe that's where a seizure occurs. Oh sure, I think that's one way to put it. I was speaking in the tenor of the opinions which call a show of authority, something that the person submits to, that a reasonable person feels restricts their liberty. So you come at it from, your argument is probably simpler stated than mine, which is simply that we don't have what the Supreme Court calls a show of authority at this point that restricts somebody's liberty. We have a reasonable request made in a polite tone, could you please take your hands out of your pockets? And that's all that we're dealing with here. And as I've said, there is no precedent for saying that this is a seizure on a farm in Kansas or in the north Philadelphia. Do you want to address the reasonable suspicion? Sure. Assuming you would find this to be a seizure. Yes sir, so assuming that this is a seizure, it probably lands in the district courts as well, that there was reasonable suspicion. And what I would invite the court to do is simply line this case up with the Supreme Court decision in Navarrette v. California. You pretty much have an exact match. I don't agree with my friend Mr. Sherman's characterization of a number of the cases he rattled off. I can go through the facts of those if you want, but I think it's important to focus on what the Supreme Court said in Navarrette. So in Navarrette, you know, Justice Thomas lists four things that he says add up to reasonable suspicion, even though it's an anonymous call to 911. And the anonymous call there says, a guy just nearly drove it off the road. You have a drunk driver on this highway out in California. And what Justice Thomas addresses, what makes this reliable is number one, the caller gave a specific description of the vehicle, the color of the make, the model. Number two, it was a first-hand observation. You could tell from the call that this was someone who had personally witnessed what she was describing. Number three, it was a contemporary age report. So even though there was no predictive information that was given, at least it was something that was happening right then. And the Supreme Court said it has always found that quote especially reliable, sort of akin to the extent of justice. Did the district give it a name? No. It was anonymous in that sense. But the fourth thing that Justice Thomas noted is that the call was made to the 911 system. And citizens pretty much know at this time, well, I know I have caller ID on my phone for anybody. I certainly know when I call 911 that they have the identification of the phone that it's coming from. So based on those four things, the Supreme Court said this adds up to reasonable suspicion. In this case, we have exactly the same circumstances. It is a contemporary age report. Now, the defense quarrels with us on that. They say there's not any record to show that the person was describing what was happening at that moment. And the district court found that it was. The district court made a finding of fact. The district court said, quote, the caller described an act of offense. That's at page 15. And what it was relying on was a dispatch report which said specifically, quote, caller says nail-pointing gun at juveniles. This was stated in the present tense. Could you read this to say, oh, maybe it's describing something that happened two hours ago? Maybe. But we're looking at what a reasonable officer would see. And in fact, Officer McQueenie, who again was found credible by the district court, he testified that he understood it in the present sense. When he was asked what was the call, he said, quote, a person with a gun pointing a gun at children, again in the present tense. So we have a contemporary age report that this officer is dealing with. Second, it was a specific description of the individual. This wasn't J.L. or they just said there's an African-American fellow standing on the corner. This was a very specific description of the paint, shirts, hat, with the colors that the person matched. As a matter, I think in Nelson we made this distinction that in J.L. it only involved a possession, whereas maybe here in this kind of case, it involves an act of violence that's going on, an act of threat of violence. Exactly. And this court made the same point in Torres that the police have a requirement to respond to immediate reports of ongoing criminal activity. That's what we expect them to do. And certainly when they get a report that somebody is pointing a gun at children. So we have a contemporary age report. It's a firsthand observation. It's a specific description. And it's made to the 911 system. And once again, the district court put on the record the address and phone number that the 911 system produced of where this call was coming from. This case is a match with Navarrette. Now, sure, Navarrette said it was a close case, but the Supreme Court resolved it and held that based on where we are in contemporary society, this got us over the reasonable suspicion hurdle. And as we all know very well, the reasonable suspicion is a low threshold. We're not talking about preponderance in the evidence. So I respect very much what Mr. Schuman says, that well, maybe this is just some mischievous person who's creating trouble for somebody. Sure, that's possible. I'm not going to deny that. Maybe there's a reasonable suspicion of that, too. But we're dealing with this low threshold, well below a preponderance. Is there enough here for the police to act? Is this more than a hunch? And an officer has more than a hunch when he hears someone who's describing in real time that somebody is pointing a gun at children, finds somebody in the exact location, leaving the exact description, and knows that the call came into 911 and there is some retribution. If the police were starting to get a raft of these mischievous calls, I'm pretty confident they would do something about it, rather than waste their valuable resources on running out on meritless calls. So our position is that there was no seizure to make this polite request. Now on page 21 of the government's brief, you also list the fact that the defendant had his hands in his pocket. But you did not mention him having his hands in his pocket here this afternoon as a basis for reasonable suspicion. Well, I appreciate you correcting the oversight because I'm focused on comparing this to Navarrete. Navarrete, when they come upon the car, it is not driving in any improper manner. But I think your honor is absolutely correct. That's an additional fact that bolsters reasonable suspicion here. If the person had his hands out of his pockets and there was no evidence of a possession of a gun, that obviously would not add to what the call was. But here, that's a little bit more corroboration. Does Officer Marquini's testimony as to why that was important to him add to the bolstering? Well, he said he was concerned about his safety. And I recall that when he was challenged by the defense on this, I think his answer was, I'm always concerned for my safety. And of course he is. And should be. I mean, he's doing a dangerous task on behalf of all of us. And this is completely reasonable for what he did. What's interesting also about Officer Marquini's testimony is that his own subjective view of whether he did a seizure is not controlling. It's an objective test. But it's certainly informative. And what he says is, I'm not arresting him at all. In fact, even after Mr. DiCastro raised his hands and the gun was visible, Marquini says, I'm not arresting him then either until I ask him, do you have a permit to carry that weapon? And he says, no, I've got a passport from the Dominican Republic. That's not a permit to carry a weapon in Pennsylvania. And so he arrested him at that point. So this is a very responsible officer doing things in a very careful, responsible way. And it's certainly reasonable under the Fourth Amendment or any other test. Thank you very much. Thank you, counsel. So this case is completely different from Navarette. In Navarette, the caller said that she had just been run off the road by a dangerous driver. And the Supreme Court inferred from that that they were a contemporary EASI witness. And those kinds of reports are considered more reliable. But in this case, there was no indication whatsoever from the call whether or not it was a contemporary EASI witness. The call was just like the call in J.L. and in Roberson where this court said, we can't infer from this whether or not it's a contemporary EASI report or whether it's an eyewitness report. There's no distinguishing this call from J.L. and Roberson in that sense. And therefore, it's controlled by those cases. My friend, Mr. Zassmer, said that the district court made findings of fact that the caller was a contemporary EASI witness. That's wrong. I urge the court to look at the district court's findings of fact. They nowhere say anything about the caller being a contemporary EASI witness. That's in the district court's legal analysis where the court says, one reason why this call was more reliable is that you could infer that the caller was a contemporary EASI witness. And that's wrong because this court couldn't make that inference in Roberson, the Supreme Court couldn't make it in J.L., and it can't make it here. And, Judge Chigares, I want to follow up on your question from my initial argument about the fact that this was an active offense rather than a gun possession offense. When the officer came and saw Mr. DiCastro, he wasn't waving a gun at anybody. The officer couldn't even see a gun. So once the officer arrived at the scene, this case was indistinguishable from J.L. It was just an illegal gun possession case, not an active offense. My friend also said that this specific description of Mr. DiCastro made a difference. It doesn't make a difference. What makes a difference in these cases is nonpublic information that bolsters the reliability of the tip. In Roberson, the caller said that the defendant was wearing green sweatpants, a brown leather jacket, and a white hoodie. That's pretty distinctive, but it didn't make a difference because it was public information. Anybody could have made that call to make a false report, just like in this case. Judge Fisher, you asked about the fact that his hands were in his pockets when the officer came up. The district court found and the officer said that there was no indication that Mr. DiCastro was involved in any criminal activity when they approached, and the government conceded at the hearing that the only cause for the stop was the phone call. So if the court's interested in potential additional grounds for the stop, I would urge it to remand for further fact-finding because we may have additional testimony to present on that matter. The only thing that the government argued below that was cause for the stop was the phone call, and it's black-letter law that it was not enough. On the seizure point, my friend said that there's no cases out there where a polite request was found to be a seizure. That's, again, just wrong. I urge the court to look at Richardson, where the officer said, okay, just hang out here for me for a second. The Sixth Circuit said the officer's tone was not enough to make it a consensual encounter. It was still a seizure, and the Fourth Circuit and Jones had the same point. Judge Fisher, you also asked about the repeated instruction. Maybe it would only become a seizure a second time. This court specifically addressed that issue in Love, and it said that one command is enough. Don't need repeated commands in order for something to be a seizure. Unless the court has any other questions, I'll rest. Thank you, counsel. Thank you very much. Well, we'll take the case under advisement and thank counsel for their really excellent briefing and argument in this case. We'd also like to meet you at sidebar, but we'll have the clerk adjourn court.